25 F.3d 1053
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Gene Vontell GRAHAM, Petitioner/Appellant,
v.
Daniel McBRIDE, Respondent/Appellee.
 No. 93-2261.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 21, 1994.*
Decided May 20, 1994.
Rehearing Denied July 6, 1994.
 
 Before FAIRCHILD, FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 A state prisoner is entitled to relief under the habeas corpus statute, 28 U.S.C. Sec. 2254, if he is in custody in violation of the Constitution, laws, or treaties of the United States. Gene Vontell Graham, a prisoner of Indiana, filed a petition for a writ of habeas corpus challenging the constitutionality of his prison disciplinary hearing. Specifically, Graham alleged that his confinement in the prison's segregation unit for six working days before his hearing, in violation of the Adult Disciplinary Policy Procedures (ADPP) promulgated by the Indiana Department of Correction, deprived him of his liberty interest in being released from pre-hearing segregation after five working days without due process of law. The district court dismissed Graham's petition, and we affirm.
 
 
 2
 We now address the issues raised in this appeal. The prison's conduct adjustment board found Graham guilty of disorderly conduct and resisting a correctional officer, in violation of prison regulations. These findings were affirmed by the Director of Adult Institutions. One month later, the Indiana Department of Correction Parole Board relied on the adjustment board's findings as the sole ground for its decision to deny Graham parole.[1] Graham properly seeks relief under the habeas corpus statute rather than 42 U.S.C. Sec. 1983, because he is challenging the duration, not the conditions, of his confinement. Graham v. Broglin, 922 F.2d 380-81 (7th Cir.1991). Graham alleged in his petition, and argues here that, but for the unconstitutional pre-hearing segregation, the conduct adjustment board could not have found him guilty of violating prison regulations, and the Parole Board would not have had a basis for denying him parole. The basis for the district court's denial of Graham's petition was that, although the procedures used in Graham's disciplinary hearing did not comply with the ADPP, Graham had not established that the ADPP creates a liberty interest in being released from pre-hearing segregation after five days. See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989).[2]
 
 
 3
 We believe that it is unnecessary to consider whether the ADPP creates a liberty interest of which Graham was deprived. Graham's claim that his continued custody is unlawful because the Parole Board used the conduct adjustment board's findings as grounds for its decision to deny him parole is inherently flawed. Even if it is assumed that the ADPP creates a liberty interest in being held in pre-hearing segregation for no longer than five working days and that Graham's confinement in the segregation unit for six working days constituted a deprivation of that interest without due process of law, the unlawful deprivation of Graham's liberty interest did not produce, or affect in any way, the Parole Board's decision.
 
 
 4
 Graham might be able to establish the necessary nexus between the alleged deprivation of his liberty without due process of law and the Parole Board's decision to deny him parole if the ADPP stated that the disciplinary charges against a prisoner must be dropped if the prisoner is held in pre-hearing segregation for longer than five working days or that the disciplinary record of such a prisoner must be expunged. But the ADPP says neither of these things. Graham does not direct us to any other state statute or regulation that would limit the Parole Board's ability to consider a conduct adjustment board's determination that a prisoner violated prison regulations because the prisoner was held in prehearing segregation for more than five working days. Any deprivation of liberty without due process of law that might have occurred in confining Graham in pre-hearing segregation for more than five working days did not infect the Parole Board's decision to deny Graham parole. The judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record
 
 
 [1]
 The prisoner's conduct during his commitment is a factor that the Parole Board must consider in making parole release determinations. See 220 Ind.Admin.Code 1.1-2-3(k)(3) (1992). Other factors that the Board must consider include the prisoner's prior criminal record, see id. at 1.1-2-3(k)(2), and the severity of the offense for which he is incarcerated, see id. at 1.1-2-3(k)(1). Graham participated in two parole hearings after 1990. In 1991 the Parole Board denied Graham parole on the basis of his institutional conduct, past criminal history, and the severity of his offense; and in 1993, the Parole Board denied Graham parole on the basis of the severity of Graham's offense and his institutional conduct. Graham argues that the fact that the Parole Board used more than his institutional conduct as grounds for denying parole subsequent to May 1990 is irrelevant since he should have been paroled in May 1990. We agree that the bases for denying parole after May 1990 should not affect the outcome of this case
 
 
 [2]
 The ADPP provides that "[t]he disciplinary hearing committee shall afford each offender all rights as contained in this Disciplinary Code." Indiana Dept. of Correction, Adult Disciplinary Policy Procedures, Sec. G, p A(3) (1984). It further states:
 The following conditions, standards and guidelines shall pertain to pre-hearing segregation: .... When an offender is segregated the disciplinary hearing shall be held within five (5) days from the date the "Conduct Report" was filed.... Any offender released from pre-hearing segregation without being charged, or charged and subsequently found not guilty, shall receive institution pay for the days of segregation. Any record of the charges is to be expunged.
 Id. Sec. D, p 11B, B(1), B(4) (1984); see also id. Sec. G, p 21A ("When the charged offender is segregated, the hearing shall be held within five (5) working days from the 'Conduct Report' filing date.").
 The ADPP has been revised. In the 1990 version of the ADPP, which is, to our knowledge, the latest version, a prisoner can be held up to seven working days from the date the conduct report was filed "except in cases where an investigation is pending or good cause is shown." The conduct report against Graham was issued on February 7, 1990, a Wednesday, and Graham was placed in pre-hearing segregation on that same day. His hearing took place on February 15, 1990, a Thursday, six working days later. This violated the 1984 version of the ADPP, but not the 1990 version. Nevertheless, the state concedes that the 1984 version of the ADPP governed Graham's disciplinary hearing.